UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELEN HATCH,

       Plaintiff,                                       Case No. 20-12679
vs.                                                     HON. MARK A. GOLDSMITH

EQUIFAX INFORMATION SERVICES,
LLC, et al.,

       Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S
MOTION TO DISMISS (Dkt. 22)**

       Plaintiff Helen Hatch has sued several Defendants, including the United States Department of Education, for violations of the Fair Credit Reporting Act. The Department of Education filed a motion to dismiss, arguing that it cannot be sued for damages under the FCRA, because Congress has not waived sovereign immunity with respect to that statute (Dkt. 22).

       The question of whether the FCRA waives sovereign immunity has generated a circuit split. Compare Bormes v. United States, 759 F.3d 793 (7th Cir. 2014) (finding a waiver), with Daniel v. Nat'l Park Serv., 891 F.3d 762 (9th Cir. 2018) (finding no waiver), and Robinson v. United States Dep't of Educ., 917 F.3d 799 (4th Cir. 2019), cert. denied, 140 S. Ct. 1440 (2020) (finding no waiver). The Sixth Circuit has not yet taken a position.

       Because the authority finding that the FCRA waives sovereign immunity is more persuasive than the authority supporting the contrary view, the motion to dismiss is denied.

1

## I. BACKGROUND

Hatch alleges that the Department of Education inaccurately reported its tradeline on her Equifax and Trans Union credit files with an erroneous notation of "account in dispute." 2d Am. Compl. ¶ 8 (Dkt. 40).[1]  She alleges that the Department of Education negligently and willfully failed to conduct a proper investigation of her dispute, failed to remove the erroneous notation of "account in dispute," and otherwise violated § 1681s-2(b) of the FCRA.  Id. ¶¶ 22–33.  She seeks to recover statutory or actual damages, as well as attorney fees and costs, pursuant to sections 1681n and 1681o.  Id. ¶¶ 27, 33

## II. LEGAL STANDARD

The Sixth Circuit recently discussed the standard to apply when the federal government asserts sovereign immunity as a jurisdictional bar to an action:

> Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. It implicates a court's subject-matter jurisdiction because the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. Any waiver of sovereign immunity must be unequivocally expressed in statutory text . . . and must be strictly construed, in terms of its scope, in favor of the sovereign.

Gaetano v. United States, 994 F.3d 501, 506 (6th Cir. 2021) (punctuation modified, citations omitted).

---

[1] The instant motion addresses the First Amended Complaint (Dkt. 12).  Although in some circumstances an amended complaint renders a motion to dismiss moot, when an amended complaint does not attempt to cure the defect alleged in the motion to dismiss, Defendants are not required to file a new motion to dismiss.  See Yates v. Applied Performance Techs., Inc., 205 F.R.D. 497, 499 (S.D. Ohio 2002).  The allegations concerning the Department of Education are unchanged between the first and second amended complaints.  There is no reason to go through the empty ritual of denying the motion to dismiss as moot and requiring the Department of Education to re-file its motion.

When a 12(b)(1) motion attacks the claim of jurisdiction on its face, all allegations of the plaintiff must be considered true. Abbott v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007). The Department of Education's motion falls into this category. See Mot. at 2 (Dkt. 22).

### III. ANALYSIS

**A. The plain language of the FCRA unequivocally waives the Department of Education's sovereign immunity with respect to the claims at issue in this case.**

The analysis of the FCRA's meaning begins "where all such inquiries must begin: with the language of the statute itself." Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1056 (2019) (punctuation modified). The FCRA contains a section entitled "Definitions; rules of construction." 15 U.S.C. § 1681a. That section defines "person" to mean "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b).

This case concerns three other sections of the FCRA, all of which use the term "person."

Subsection 1681s-2(b), which the Department of Education is accused of violating, begins: "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . ." § 1681s-2(b) (emphasis added).

The other two sections at issue describe remedies. Section 1681n(a) states: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." § 1681n(a) (emphasis added). Section 1681o(a) states, "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." § 1681o(a) (emphasis added). Both sections continue by defining the damages available.

3

Where statutes define a term, "that definition must govern the resolution of [the] case." Tennessee Prot. & Advoc., Inc. v. Wells, 371 F.3d 342, 346 (6th Cir. 2004). The Department of Education falls within the meaning of "person" by virtue of being a "governmental subdivision or agency." § 1681a(b). Sections 1681n and 1681o impose monetary liability on "any person." By thus authorizing monetary liability against the Department of Education, Congress waived the sovereign immunity that would otherwise bar this suit.

In Bormes, the Seventh Circuit reached the same conclusion:

> Any "person" who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages. 15 U.S.C. §§ 1681n(a), 1681o(a). "Person" is a defined term: "any individual, partnership, corporation, trust, estate, cooperative, association, <u>government or governmental subdivision or agency</u>, or other entity." 15 U.S.C. § 1681a(b). The United States is a government. One would suppose that the end of the inquiry. By authorizing monetary relief against every kind of government, the United States has waived its sovereign immunity. And so we conclude.

759 F.3d at 795 (emphasis added by Bormes).

The plain language of the statute necessitates a finding that the FCRA waives sovereign immunity.

**B. The reasons for ignoring the plain language of the statute are unavailing.**

The Department of Education has presented several arguments against Bormes's conclusion, largely relying on Daniel, Robinson, and several district court opinions. None of these arguments is persuasive.

**1. Absurdity**

The first argument against applying § 1681a(b)'s definition of "person" to the FCRA's enforcement provisions is that doing so would lead to absurd results. As the Department of Education argues, Mot. at 6, courts "must look beyond the language of the statute . . . when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead

4

to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." Vergos v. Gregg's Enters., Inc., 159 F.3d 989, 990 (6th Cir. 1998).

The most prominent potentially absurd result is that "treating the United States as a 'person' across the FCRA's enforcement provisions would subject the United States to criminal penalties." Daniel, 891 F.3d at 770. This fear relates to § 1681q, which states, "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both." § 1681q (emphasis added). Courts, in other contexts, have rejected interpretations of generic terms to include the government where such an interpretation would render the United States subject to criminal prosecution. For example, the Tenth Circuit has held that federal prosecutors are not prohibited from exchanging leniency for testimony by a statute stating that "whoever" gives, offers, or promises anything of value in exchange for testimony will be imprisoned or fined. See United States v. Singleton, 165 F.3d 1297, 1299 (10th Cir. 1999) (en banc). The court reasoned that because federal prosecutors act as the alter ego of the United States in its sovereign capacity, and the United States cannot be imprisoned, the statute could not have referred to federal prosecutors. Id. at 1300.

The absurdity of imprisoning the government would be a fine argument against applying § 1681q against the government. But it does not fully explain why the use of "person" in sections 1681n and 1681o should be informed by § 1681q rather than § 1681a, the definition section.

The ordinary assumption is that "identical words used in different parts of the same act are intended to have the same meaning." Util. Air Regul. Grp. v. E.P.A., 573 U.S. 302, 319 (2014) (punctuation modified, citation omitted). However, the "presumption of consistent usage readily yields to context, and a statutory term—even one defined in the statute—may take on distinct

characters from association with distinct statutory objects calling for different implementation strategies." Id. (punctuation modified, citation omitted). This principle allows for the statutory term "person" to be given its defined meaning (i.e., one including the federal government) with respect to § 1681n and § 1681o and its only fair reading (i.e., one that excludes the federal government) in § 1681q. The language that Congress chose to use to bring the federal government within the network of obligations that the FCRA created need not be ignored just to avoid the prosecution of federal agencies, which Congress undoubtedly did not intend.

Of course, the principle discussed in Util. Air Regul. Grp. could support the Department of Education's argument in one respect. It argues that "person" should be interpreted to include the federal government with respect to substantive provisions and to exclude the federal government in the case of enforcement mechanisms. Mot. at 4; see also Robinson, 971 F.3d at 806 (advancing the same position). "Just because the government must meet a statutory obligation," it argues, "does not mean that failure to comply with that obligation will result in money damages." Mot. at 5. Such an arrangement is not out of the question; "Congress is free to waive the Federal Government's sovereign immunity against liability without waiving its immunity from monetary damages awards." Lane v. Pena, 518 U.S. 187, 196 (1996).

Ultimately, deciding this motion in favor of either party requires an interpretation of the FCRA where the word "person" takes on different meanings in different contexts. Either "person" must be given its defined meaning except where doing so would be absurd, or the line must be drawn elsewhere. The problem with the Department of Education's argument is that its proposal to draw the line between "enforcement" and "substantive" provisions is untenable.

The first problem is textual. "Nothing in the FCRA allows the slightest basis for a distinction" between the use of "person" in substantive and enforcement provisions. Bormes, 759

F.3d at 795. The second problem is perhaps more severe. Reading § 1681n and § 1681o to allow damages only against those persons who could be imprisoned under § 1681q would lead to a far greater absurdity in sections 1681n and 1681o than anything the Department of Education has identified.

The problem is that government agencies are not the only category of "persons" named in § 1681a(b) who cannot be imprisoned. Corporations, in particular, present a problem. Just as the Department of Education has argued in relation to the federal government, a corporation could argue that corporations cannot be imprisoned and invoke the absurdity of interpreting "person" in § 1681q to refer to it. And if identifying such an absurdity were enough to change the meaning of "person" across the FCRA's enforcement sections, no one other than imprisonable persons (i.e., natural persons) would be subject to the remedies discussed in sections 1681o and 1681n. That would be absurd. And "[i]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." Guzman v. U.S. Dep't of Homeland Sec., 679 F.3d 425, 432 (6th Cir. 2012). The Department of Education's alternative interpretation would lead to a result deeply inconsistent with the FCRA's purpose, rendering the Department's invocation of the absurd results canon unpersuasive.

Reading "person" to include the Department of Education in sections 1681n and 1681o would not itself be absurd. The Department of Education does not argue that interpreting the sections actually at issue in this case would lead to absurd results; its argument focuses on § 1681q, which allows for the imprisonment of persons, and § 1681s, which allows for the investigation of "persons" by government agencies. See Mot. at 5–8.[2]

---

[2] The Department of Education does not provide any argument or cite any caselaw explaining why it would be absurd for § 1681s to allow the Federal Trade Commission—the agency responsible for enforcing this section FCRA—to investigate other federal agencies. While the FTC's right to

Although the Department of Education does not advance this argument, Daniel finds it implausible that Congress intended for § 1681n remedies to be available against the federal government, a conclusion it reaches based on the paucity of punitive penalties to which the United States subjected itself. 891 F.3d at 771–772. But rarity and absurdity are not equivalent concepts. Indeed, as Daniel concedes, another section of the FCRA—one dealing with disclosures to the FBI for counterintelligence purposes—allows for punitive damages against "any agency or department of the United States" violating the substantive provisions of that section. See § 1681u(j). So even if rare, punitive penalties are not unheard of, or even foreign to the FCRA.[3]

In sum, there is nothing absurd about reading sections 1681n and 1681o to impose monetary liability on the United States. The Department of Education has identified at least one section of the FCRA that is likely inapplicable to the federal government, even though that section purports to apply to all "persons." But allowing that anomaly to inform how the word "person" is read in all of the enforcement provisions of the FCRA would have the tail wag the dog. Again, neither side advocates for a theory of the FCRA under which "person" is used consistently

---

do so is far outside the scope of this opinion, the possibility of one government agency investigating another is not per se absurd. For example, the United States attorney general and the FBI have statutory authority to "investigate any violation of Federal criminal law involving Government officers and employees." 28 U.S.C. § 535. And as Daniel notes, the Resource Conservation and Recovery Act allows the Environmental Protection Agency to enforce compliance against other federal agencies, albeit as part of a "more collaborative procedure that recognizes the unique posture of one agency punishing another for violations of federal law . . . ." Daniel, 891 F.3d at 771 n.5. Furthermore, as discussed in the main text of this opinion, an identified "absurdity" in one section of the FCRA does not allow courts to disregard the defined term in some arbitrary set of FCRA sections.

[3] As Daniel notes, "Assessment of punitive damages in this section cuts both ways. It demonstrates that Congress was willing to impose punitive damages on the United States in the FCRA. At the same time, it shows that when Congress intends to impose this rare liability on the United States, Congress does so explicitly." 891 F.3d at 772 n.1. This Court makes more of the former "cut" than the latter, for reasons discussed in section III.B.2 of this opinion.

throughout the statute. Under such circumstances, courts "must do our best" to overcome Congress' imperfect draftsmanship and give meaning to words in context. Util. Air Reg. Grp., 573 U.S. at 319–320. Here, that task requires applying the defined meaning of "person" in sections where it is not unreasonable or absurd to do so.

### 2. Explicitness in Waivers

The next issue is whether the waiver of sovereign immunity is sufficiently explicit. The Department of Education cites Daniel extensively, including Daniel's analysis of § 1681u—the FBI-related section that Daniel and the Department of Education agree waives sovereign immunity in a very limited context. The Daniel court treats § 1681u(j) as proving the rule that when Congress waives sovereign immunity, it does so with greater specificity than merely using defining the term "person" to include governments and government agencies and then using the defined term in other sections of the FCRA. 891 F.3d at 771–772; see also § 1681u(j) ("Any agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer . . . .").

However, as Daniel concedes, "the section's limited focus on federal agencies might explain the difference in statutory language . . . ." 891 F.3d at 772. Writing "person" instead of "agency or department of the United States" in § 1681u(j) would make no sense, as that section has no applicability to persons other than the federal government and federal agencies. In fact, § 1681u(j) might support an alternative rule: when Congress intends to limit portions of the FCRA to specific categories of persons, it names those entities. The fact that § 1681u(j) refers to "any agency or department of the United States" makes it less likely that when Congress wrote "persons" in sections § 1681n and § 1681o, it really meant, "all persons except for governments and government agencies."

9

Additionally, Daniel compares the FCRA's alleged waiver of sovereign immunity with that of statutes that waive sovereign immunity more explicitly. 891 F.3d at 772. However, this Court is more persuaded by Bormes's reasoning. As Daniel acknowledges, id., Congress need not use magic words to waive sovereign immunity, F.A.A. v. Cooper, 566 U.S. 284, 290–291 (2012). What is required "is that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools." Cooper, 566 U.S. at 291. Using the same tools as Bormes, as discussed in section III.A of this opinion, the Court clearly discerns a waiver of sovereign immunity with respect to Hatch's claims.

### 3. Robinson v. United States Dep't of Educ.

Robinson covers much of the same ground as Daniel. It adds a few distinct points, including the possibility that accepting the Robinson plaintiff's argument "would expose 'any government' to liability, including foreign, tribal, and state governments." Robinson, 917 F.3d at 805. This would be a problem, according to Robinson, because it would contradict various treaties, principles of international comity, and constitutional limitations. Id. However, as Bormes explains, "[n]o rule of law establishes that, if states cannot be liable, then the United States is not liable." 759 F.3d at 797. As Bormes discusses regarding the Religious Freedom Restoration Act, Congress' unconstitutional attempts to regulate states do not prevent laws phrased as regulating "governments" from operating against the United States. Id. ("Congress can give consent for itself even though not for the states."). Furthermore, the Seventh Circuit, without disavowing Bormes, found that the FCRA did not abrogate tribal immunity. See Meyers v. Oneida Tribe of Indians of Wis., 836 F.3d 818, 826 (7th Cir. 2016) ("The district court hit the nail on the head when it explained that: 'It is one thing to say "any government" means "the United States." That is an entirely natural reading of "any government." But it's another thing to say "any government"

10

means "Indian Tribes."'"") (quoting <u>Meyers v. Oneida Tribe of Indians of Wisconsin</u>, No. 15-CV-445, 2015 WL 13186223, at *2 (E.D. Wis. Sept. 4, 2015), <u>aff'd</u>, 836 F.3d 818 (7th Cir. 2016)).

<u>Robinson</u> also observes that the definition of "person" in § 1681a "does not specifically mention the United States or the federal government." 917 F.3d at 803. However, it is hard to imagine Congress did not have the federal government in mind when it wrote "government or governmental subdivision or agency." <u>See</u> § 1681a. This is especially so in light of Congress' authority to waive its sovereign immunity and its more limited authority to waive the immunity of other governments.

## IV. CONCLUSION

Because the FCRA unambiguously waives sovereign immunity, the Department of Education's motion to dismiss (Dkt. 22) is denied.

SO ORDERED.

Dated: May 13, 2021                   s/Mark A. Goldsmith
  Detroit, Michigan                   MARK A. GOLDSMITH
                                             United States District Judge